**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| RONNIE Q. HENDERSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   CAUSE NO.: 3:12-CV-43-TLS |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Ronnie Q. Henderson, a prisoner proceeding pro se, is serving a 50-year sentence for drug offenses committed in Elkhart County. *State v. Henderson,* 20D03-0604-FA-014. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions [ECF No. 1].

**BACKGROUND**

In deciding the Petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Henderson's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals summarized the facts underlying Henderson's offenses as follows:

> On April 22, 2006, Elkhart County Sheriff's Deputy Michael Wass was stopped at a traffic light and noticed Henderson, who was driving a nearby vehicle. After the deputy observed that Henderson's vehicle had a broken taillight and a cracked windshield that obstructed the view of the driver, he initiated a traffic stop. Henderson pulled into the driveway of a residence and jumped out of the vehicle. The deputy ordered Henderson to get back inside his vehicle and asked for his driver's license and registration. Henderson held the registration in his left hand and appeared to be searching for something with his right hand in between the front seats. Deputy Wass observed Henderson move his hand as if to throw something. The deputy became concerned for his safety but elected not to pursue the matter until backup arrived because he did not want to further upset Henderson.

> Henderson eventually produced his State-issued identification card and admitted to Deputy Wass that his driver's license was suspended, which the deputy confirmed to be true. As Henderson handed the deputy his identification card, he was nervous and his hands were shaking. The deputy arrested Henderson for driving with a suspended license and searched Henderson, finding "two very large rolls of money." Tr. p. 263. Henderson was then placed in the deputy's vehicle so that the deputy could begin the process of impounding Henderson's vehicle.
>
> Pursuant to department policy, Deputy Wass inventoried the van before it was impounded. The deputy discovered a sweatshirt and sweatpants on the front passenger seat, and when he moved the clothing he noticed a strong odor of marijuana. He then saw a brown bag and opened it, finding fifty-five grams of marijuana. He also found cocaine weighing 21.83 grams in multiple smaller bags.
>
> On April 26, 2006, the State charged Henderson with class A felony dealing in cocaine and class D felony possession of thirty or more grams of marijuana. On August 8, 2006, Henderson filed a motion to suppress the drug evidence based on the allegedly unlawful search of his vehicle. Following a hearing, the trial court denied Henderson's motion. A jury trial commenced on April 2, 2007, at which the trial court overruled Henderson's renewed objection to the admission of the drug evidence. On April 4, 2007, the jury found Henderson guilty as charged. On May 24, 2007, the trial court sentenced Henderson to fifty years for dealing in cocaine and three years for possession of marijuana, to be served concurrently.

*Henderson v. State*, No. 20A04-0707-CR-372, slip op. at *2-3 (Ind. Ct. App. Mar. 20, 2008).

On direct appeal, Henderson argued that the trial court erred in denying his motion to suppress because the search of his van violated the Fourth Amendment. *Id.* at *4–5. The Indiana Court of Appeals determined that the search was valid under the Fourth Amendment and affirmed Henderson's convictions. *Id.* Henderson filed a petition to transfer in the Indiana Supreme Court, again raising his Fourth Amendment claim. [ECF No. 5-7.] The Indiana Supreme Court denied the petition. [ECF No. 5-2 at 6.] He did not seek review in the U.S. Supreme Court. [ECF No. 1 at 1.]

In October 2009, Henderson filed a petition for post-conviction relief with the state trial court. [ECF No. 1 at 2.] He claimed that the search of his van was invalid under the U.S.

Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), which was issued after his conviction became final. *See Henderson v. State*, No. 20A03-1102-PC-108, slip op. at *4 (Ind. Ct. App. Aug. 29, 2011). Following a hearing at which Henderson was represented by appointed counsel, the trial court determined that *Gant* was inapplicable to Henderson's case, and alternatively, that the search was valid even after *Gant*. *Id.* Henderson appealed. *Id.* The Indiana Court of Appeals determined that the search was proper and affirmed the denial of post-conviction relief. *Id.* at *5–11. Henderson sought transfer to the Indiana Supreme Court, reasserting his Fourth Amendment claim. [ECF No. 5-14.] The Indiana Supreme Court denied the petition. [ECF No. 5-9 at 4–5.] Henderson did not seek review in the U.S. Supreme Court. [ECF No. 1 at 2.]

In January 2012, Henderson filed a federal habeas petition raising three claims, all of which are premised on a Fourth Amendment challenge to the search of his van: (1) the trial court erred by allowing admission of the evidence found in his van because the search was unlawful under the Fourth Amendment; (2) Officer Wass violated his rights under the Fourth Amendment in conducting the search; and (3) the Indiana Court of Appeals erred in interpreting federal law pertaining to searches. [ECF No. 1, 8.]

## ANALYSIS

Henderson's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Here, all three of Henderson's claims are based on a Fourth Amendment challenge to the search of his van. [ECF No. 1, 8.] The Respondent argues that these claims are not cognizable in this proceeding. [ECF No. 6.] As the Respondent correctly points out, the U.S. Supreme Court

has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). This is because the exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009). The rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, since it "deflects the truthfinding process and often frees the guilty." *Stone*, 428 U.S. at 484, 490. Thus, the rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486–87. In habeas proceedings the "contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495.

Therefore, federal habeas courts are barred from reviewing Fourth Amendment claims that were fully and fairly litigated in state court. *Id.* at 494–95; *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) ("As long as a habeas petitioner enjoyed an opportunity for full and fair litigation of a Fourth Amendment claim in state court, federal habeas review of the claim is barred."). A habeas petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if: (1) he apprised the state court of his Fourth Amendment claim along with the factual basis for that claim; and (2) the state court thoroughly analyzed the facts and looked to the

appropriate body of decisional law to resolve the claim. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005); *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

      A review of the state proceedings demonstrates that Henderson had a full and fair opportunity to litigate his Fourth Amendment claim. As recounted above, Henderson raised his Fourth Amendment claim in the trial court both before and during trial, and at two levels of appellate review. *See Henderson*, No. 20A04-0707-CR-372, slip op. at *4–7. He was represented by counsel throughout these proceedings, had an opportunity for an evidentiary hearing in the trial court, and filed appellate briefs fully outlining his Fourth Amendment claim. [*See* ECF Nos. 5-3, 5-5, 5-7.] The Indiana Court of Appeals issued an opinion thoroughly analyzing the facts pertaining to the search and looking to applicable Fourth Amendment law to resolve Henderson's claim. *See Henderson*, No. 20A04-0707-CR-372, slip op. at *1–7. In the post-conviction proceedings, where Henderson was represented by counsel, he again asserted a Fourth Amendment claim challenging the search of his van. *Henderson*, No. 20A03-1102-PC-108, slip op. at *4. He had an opportunity for a hearing in the trial court, and on appellate review he submitted briefs fully outlining his Fourth Amendment claim. [ECF Nos. 5-10, 5-12, 5-14.] The Indiana Court of Appeals issued an opinion thoroughly considering the relevant facts and looking to applicable case law to resolve the claim. *See Henderson*, No. 20A03-1102-PC-108, slip op. at *1-11. In sum, it is clear that Henderson had a full and fair opportunity to litigate his Fourth Amendment claim.

      In his traverse, Henderson does not argue that he was denied an opportunity to litigate his Fourth Amendment claim in state court. [ECF No. 8.] Instead, he argues the merits of his Fourth Amendment claim. [*Id.*] Although Henderson clearly disagrees with the result reached by the

Indiana courts, the opportunity for full and fair litigation of a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). Unless there has been a "subversion of the hearing process," a federal habeas court "will not examine whether the judge got the decision right." *Id.* at 531. Henderson has not demonstrated that there was a subversion of the hearing process in state court. He "simply asks [this Court] to disagree with the state courts' decision, a path that *Stone* closes." *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). Accordingly, the Petition must be denied.

As a final matter, the Court must consider whether to grant Henderson a certificate of appealability. 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons fully articulated above, Henderson has not shown that reasonable jurists could debate the correctness of this Court's determination that his Petition is barred by *Stone*. Accordingly, the Court declines to issue Henderson a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Petition [ECF No. 1] and **DENIES** the Petitioner a certificate of appealability.

SO ORDERED on August 7, 2012.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT
                                          FORT WAYNE DIVISION